# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TRAYCE FORD-REYES, <br> TYNA KIRK, <br> JOEL L. FORD, and <br> REGINALD FORD, <br><br> Plaintiffs, <br><br> v. <br><br> PROGRESSIVE FUNERAL HOME, <br> D&S ASSOCIATED DELIVERY <br> SERVICES, INC., and <br> UNITED PARCEL SERVICE, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. 19-cv-1229 <br><br> Hon. Steven C. Seeger |

## MEMORANDUM OPINION AND ORDER

The end of life can raise important questions, such as: Why are we here? This case presents a different, but related question: Why are the parties here? The suit involves an urn of cremated remains that was unsuccessfully shipped from Georgia to Indiana. The Defendants aren't from Illinois, and nothing took place in Illinois to give rise to a claim. The nexus to this forum is almost completely lacking. The answer to the first question may be open to debate, but the answer to the second question is not: They shouldn't be.

Joel D. Ford, a Georgia resident, passed away in 2018. *See* Cplt. ¶ 11. After the funeral in Georgia, the family had his body cremated by a local funeral home. *Id.* at ¶ 12. The four adult children – the Plaintiffs – decided to share the ashes. *Id.* at ¶ 13. But they didn't live in Georgia, and they didn't travel home with the ashes after the funeral. *Id.* at ¶ 14. Instead, they arranged for the funeral parlor to ship the ashes to their homes in Texas, Illinois, and Indiana. *Id.*

That's when things began to go amiss. Defendant Progressive Funeral Home divided the remains into four urns (one for each Plaintiff). *Id.* at ¶¶ 13-14. The funeral home packaged the urns in four boxes, and brought them to Defendant D&S Associated Delivery Services (which goes by "The Mail Room"). *Id.* at ¶¶ 14, 18. The urns "were boxed in cardboard boxes, then placed inside another cardboard box which was labeled 'fragile.'" *Id.* at ¶ 19.

The complaint doesn't say much about the urns themselves, but like most urns, these urns were breakable. One of the Defendants provides a little detail, revealing that the urns were made of glass. *See* Dckt. No. 24, at 2. Suffice it to say that one of the urns proved to be fragile, indeed. At the end of the story, the shipping company thought that the boxes contained shattered "kitchenware." *See* Cplt. ¶ 27.

The Mail Room shipped the four urns by using the services of Defendant UPS. *See* Cplt. ¶ 21. That decision, Plaintiffs allege, was negligent. UPS does not accept packages containing human ashes. *See id.* at ¶¶ 15, 41(d). In fact, the United States Postal Service is the "only legal and approved method of shipping human remains." *Id.* at ¶ 15. And even then, the U.S. Postal Service requires special labelling, presumably so that the mail carriers will take extra care with the packages. *See id.* at ¶ 17.

It is unclear whether The Mail Room knew that the four packages contained human remains. The complaint alleges that The Mail Room "knew, or should have known," that the boxes contained ashes. *Id.* at ¶ 46. Perhaps the fact that a funeral home requested the shipment should have raised an eyebrow. In any event, The Mail Room ultimately shipped the four packages by UPS instead of the U.S. Postal Service. *Id.* at ¶ 21. And the packages did not have any special label saying that they contained human remains. *Id.* at ¶¶ 20, 32(b), 37, 41(b), 46. The boxes looked like four ordinary boxes.

UPS shipped the four packages to three states. *Id.* at ¶ 21. Two of the packages arrived safely in Texas, and the third package arrived safe and sound in Illinois. *Id.*; *see also* Dckt. No. 24, at 2. But the final package, destined for Indiana, did not. *See* Cplt. ¶ 22.

Defendants Progressive Funeral Home and The Mail Room later told one of the Plaintiffs that the package was "lost." *Id.* at ¶ 26. That wasn't quite right, except in the sense that a ship is "lost" at sea. The urn wasn't missing. The urn, unfortunately, was "thrown in the trash." *Id.* at ¶ 27.

The details are a little sketchy, but the bottom line is that the fourth urn never arrived at its intended destination in Indiana. The UPS receipt said that the package was "damaged in transit." *Id.* at ¶ 23. The urn "irretrievably shattered" into a pile of "broken glass." *See* Dckt. No. 24, at 2. So UPS simply threw it away. The receipt offered little comfort in its matter-of-fact description: "damaged merchandise discarded." *See* Cplt. ¶ 25. As Plaintiffs put it, "Defendant UPS threw the box and its contents – Joel Ford's Cremated Remains – in the garbage." *Id.* at ¶ 24.

UPS, for its part, blamed the packaging. UPS reported that "during the inspection, it was determined the package was not packed properly." *Id.* at ¶ 28. Whatever the cause, the urn broke into pieces, and the cremated remains "were never located or recovered." *Id.* at ¶ 29.

The four adult children sued the funeral home, The Mail Room, and UPS, bringing six negligence-based claims. But they didn't file suit in Georgia, where the decedent resided, and where the funeral and cremation took place, and where the urns were packaged and shipped, and where each of the Defendants handled the urns, and where the Defendants reside. Plaintiffs didn't sue in Indiana, either. Instead, Plaintiffs filed suit in the Northern District of Illinois.

3

Defendants moved to dismiss on various grounds. Two of the Defendants challenged personal jurisdiction (but UPS did not). *See* Dckt. Nos. 19, 21, 23. All of the Defendants moved to dismiss for failure to state a claim under Rule 12(b)(6). *Id.* And most importantly, all of the Defendants moved to dismiss for improper venue. *Id.*; *see also* Fed. R. Civ. P. 12(b)(2).

Venue is the "geographic specification of the proper court" in the federal judicial system. 28 U.S.C. § 1390(a). Unlike jurisdiction, which refers to the power of a court, venue refers to the right place to exercise that power. *See* 17 James Wm. Moore *et al.*, Moore's Federal Practice § 110.01[5] (3d ed. 2019). Venue "determines *which* federal court – usually meaning which federal district – should hear the case." Arthur R. Miller, 14D Fed. Prac. & Proc. Juris. § 3801 (4th ed. 2019). The basic idea is that there needs to be a nexus between the forum and the dispute. When selecting a courthouse, like any other real estate, location matters.

Section 1391 governs the venue of "all civil actions" filed in district courts. 28 U.S.C. § 1391(a)(1). The statute provides that an action "may be brought" in three – and only three – locations:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Based on the plain text of the statute, this case does not belong in the Northern District of Illinois. This case does not satisfy the residency provision. *See* 28 U.S.C. § 1391(b)(1). All of the Defendants reside in Georgia, as the complaint itself makes clear. Progressive Funeral Home is a Georgia corporation with a principal place of business in Georgia. *See* Cplt. ¶ 8. The Mail Room is a Georgia corporation with a principal place of business in Georgia. *Id.* at ¶ 9. And UPS is a Delaware corporation with a principal place of business in Georgia. *Id.* at ¶ 10. That's a lot of Georgia, and not a lot of Illinois.

Plaintiffs make no argument based on the Defendants' residence. In fact, Plaintiffs concede that "[v]enue is ***not*** proper under 1391(b)(1) in this matter, as all Defendants are residents of different districts, and not all Defendants are residents of the same state." *See* Dckt. No. 28, at 3 (emphasis added).[1]

Instead, the complaint alleges that venue is proper in the Northern District of Illinois because "Plaintiff Trayce Ford-Reyes is a resident of the Northern District of Illinois." *See* Cplt. ¶ 3. But under the plain language of the statute, a plaintiff's residence makes no difference. The text refers to the judicial district "in which any *defendant* resides," and a reference to the plaintiff's residence is nowhere to be seen. *See* 28 U.S.C. § 1391(b)(1) (emphasis added).

---

[1] For "all venue purposes," an entity "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Hypothetically speaking, Plaintiffs could have attempted to make such a bootstrapping argument, by using personal jurisdiction to establish venue. That is, Plaintiffs could have argued that this Court has personal jurisdiction over all of the Defendants, and therefore all of the Defendants are deemed to be residents of Illinois under § 1391(c)(2), and therefore (so the argument would go) this venue is proper under § 1391(b)(1). But Plaintiffs made no such argument – in fact, they affirmatively disclaimed any reliance on § 1391(b)(1) – and thus it is waived. In any event, any argument that this Court has personal jurisdiction over the funeral home and The Mail Room would have failed. Their contacts with Illinois were not continuous and systematic, and the claims do not arise out of any contacts with Illinois. *See Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 919 (2011) (explaining general and specific jurisdiction). That's fatal to venue, because § 1391(b)(1) applies only if "all defendants" reside here.

Simply put, when it comes to venue, the plaintiff's residence counts for nothing. *See* Arthur R. Miller, 14D Fed. Prac. & Proc. Juris. § 3805 (4th ed. 2019) ("[T]he residence of the plaintiff is irrelevant under Section 1391."); *Moran v. Smith*, 2016 WL 4033268, at *2 (W.D. Tex. 2016); *Schwartz v. Planalytics, Inc.*, 2017 WL 2812878, at *3 (D.N.J. 2017); *Okereke v. Allen*, 2015 WL 5508888, at *2 (S.D.N.Y. 2015); *Townsend v. Pep Boys, Manny Moe and Jack*, 2014 WL 4826681, at *3 (N.D.N.Y. 2014). From 1887 to 1990, a plaintiff could file suit in the place of his or her residence, but Congress abolished that approach in the 1990 amendment. *See* Arthur R. Miller, 14D Fed. Prac. & Proc. Juris. §§ 3805, 3806 (4th ed. 2019).

This case does not satisfy the "substantial events" provision, either. *See* 28 U.S.C. § 1391(b)(2). The Northern District of Illinois would be a proper venue if a "substantial part of the events or omissions giving rise to the claim occurred" here. *Id.* A "substantial part" of the story does not mean *most* of the story. *See Receivership Mgmt., Inc. v. AEU Holdings, LLC*, 2019 WL 4189466, at *14 (N.D. Ill. 2019); *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 877 (N.D. Ill. 2015). Venue could be proper in more than one place, and the Northern District of Illinois does not have to be the "best venue." *See Brito v. Urbino*, 2018 WL 3672743, at *4 (N.D. Ill. 2018); *Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 952-53 (N.D. Ill. 2017). But even so, the ties to the forum must be "substantial." *See* 28 U.S.C. § 1391(b)(2). And here, *no* part of the story took place in Illinois, let alone a substantial part of the story.

All of the events or omissions that gave rise to a claim occurred in Georgia, hundreds of miles away. Plaintiffs' father passed away in Georgia, and the funeral and cremation took place in Georgia. *See* Cplt. ¶¶ 11-12. The Georgia funeral home took the urn to a "pack and ship" store in Georgia. *Id.* at ¶¶ 8, 14, 18. That local Georgia business, in turn, entrusted the box to a

Georgia shipping company. *Id.* at ¶¶ 10, 21. The Georgia shipping company shipped the package in question to Indiana (or at least intended to).

The complaint includes almost no reference to Illinois, except to say that one of the four Plaintiffs lives here. *See, e.g., id.* at ¶ 5. Plaintiffs never allege that the package was lost in Illinois, or damaged in Illinois, or discarded in Illinois. On the face of the complaint, there is no reason to believe that any of the Defendants' conduct took place here.

Plaintiffs freely admit that "[n]o party knows precisely where, or even in which state, the cremains of Joel D. Ford were damaged, destroyed, or disposed of." *See* Dckt. No. 29, at 9; *see also id.* at 8; Dckt. No. 28, at 10-11. Plaintiffs have "no evidence whatsoever" that the urn shattered in Illinois – "none of them were told" where it happened. *See* Dckt. No. 29, at 10. Plaintiffs argue that "[b]ecause it is unknown where the cremains were ultimately destroyed, venue is proper in the Northern District." *Id.* But that is upside-down. If there is "no evidence" that the conduct took place in Illinois, then there is no reason to be in Illinois. *Id.*

In fact, it is entirely possible that the package never even crossed the Illinois border. Illinois, after all, is on the other side of Indiana when coming from Georgia. Maybe the package flew into O'Hare airport, but if so, the complaint says no such thing. Even so, a potential pitstop in Illinois would not be enough for venue. The events and omissions that gave rise to the claim – the packaging of the box, the failure to label, the failure to ship by U.S. Mail, and so on – took place in Georgia. *See* Cplt. ¶¶ 14-29, 32, 37, 41, 46.

True, Defendants did package and ship one of the four urns to Illinois. *See* Cplt. ¶¶ 14, 21. But *that* box arrived safely. When it comes to venue, what matters is where the "events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). A box that arrived successfully does not give rise to a claim.

7

It is not enough to allege that one of the Plaintiffs suffered harm in Illinois. Otherwise, a plaintiff could always have a home-court advantage. *See John Crane Inc. v. Simon Greenstone Panatier Bartlett, APC*, 2017 WL 1093150, at *13 (N.D. Ill. 2017); *Bartlett v. Bartlett*, 2017 WL 106043, at *3 (N.D. Ill. 2017); *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 879 (N.D. Ill. 2015); 17 James Wm. Moore *et al.*, Moore's Federal Practice § 110.04[1], at 110-41 to 110-42 (3d ed. 2019) ("Generally, however, the court must focus on activities of the defendant, not the plaintiff."); Arthur R. Miller, 14D Fed. Prac. & Proc. Juris. § 3806 (4th ed. 2019). "Indeed, it takes only a moment's thought to realize that if economic harm to a plaintiff were really enough to satisfy Section 1391(a)(2), neither of the other alternatives – Section 1391(a)(1) and (a)(3) – would ever have to be looked at, for a plaintiff could *always* bring suit at its home base on the premise that it has suffered harm there." *Financial Mgmt. Servs., Inc. v. Coburn Supply Co.*, 2003 WL 255232, at *2 (N.D. Ill. 2003) (Shadur, J.) (emphasis in original) (discussing a predecessor version of the statute).

Plaintiffs concede that venue is not proper in the Northern District of Illinois under Section 1391(b)(2). *See* Dckt. No. 28, at 3 ("This section is not applicable here."). In fact, Plaintiffs appear to argue that venue is not proper under this Section – **anywhere** – because the harms were spread across three states. "With respect to 1391(b)(2), venue cannot be proper under this section because all of Plaintiff's harms occurred in different venues – Illinois, Texas, and Indiana." *Id.*

That argument misses the mark, for two reasons. First, under the plain text of the statute, the question is whether a "substantial part of the events or omissions giving rise to the claim occurred" in the judicial district. *See* 28 U.S.C. § 1391(b)(2). The test is not where a plaintiff suffered harm. And the test is not where a plaintiff suffered **most** of the harm. Venue is proper

8

wherever the acts or omissions substantially took place, even if a plaintiff suffered harm someplace else.  Second, Plaintiffs could have invoked Section 1391(b)(2) to establish venue if they had sued in the right state:  Georgia.

The final statutory provision does not apply, either.  The statute allows a suit in "any judicial district in which any defendant is subject to the court's personal jurisdiction," but only "if there is no district in which an action may otherwise be brought as provided in this section."  28 U.S.C. § 1391(b)(3).  This venue choice is "one of last resort."  *See* James Wm. Moore, Moore's Federal Practice § 1391.2[5][b] (Judicial Code) (3d ed. 2019).  And here, Plaintiffs could sue all of the Defendants in Georgia.  In fact, all of the Defendants admit that Plaintiffs can sue them there.  *See* Dckt. No. 19, at 7-8; Dckt. No. 21, at 8; Dckt. No. 24, at 5.

The only remaining issue is where to go next.  When there is improper venue, a district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  This Court declines to transfer this case because there is more than one potential landing spot.  As Defendants concede, this case could proceed in the Northern District of Georgia (where UPS resides, in Atlanta) or in the Middle District of Georgia (where the funeral home and The Mail Room reside, in Columbus).  *See* Dckt. No. 19, at 7-8; Dckt. No. 21, at 8; Dckt. No. 24, at 5.  Plaintiffs, not this Court, should make that tactical decision.

The loss of Mr. Ford's remains is understandably upsetting, and it undoubtedly compounds the family's grief from the loss of a loved one.  The issue here is not whether they have a claim – they might.  But that's for another court to decide.  The only issue here is whether this case belongs in this forum, and the Court simply concludes that it does not.

The motions to dismiss for improper venue are granted, and this case is dismissed without prejudice. *See Johnson v. Western & Southern Life Ins. Co.*, 598 Fed. Appx. 454, 456 (7th Cir. 2015); *Farmer v. Levenson*, 79 Fed. Appx. 918, 922 (7th Cir. 2003); Fed. R. Civ. P. 41(b). In light of the improper venue, this Court does not address the remaining arguments raised in the motions to dismiss.

Date:   November 26, 2019

Steven C. Seeger
United States District Judge